All right, Mr. Wallenstein, you've reserved three minutes for rebuttal, and that gives you seven minutes to begin. You may proceed. Thank you, Your Honors. John Wallenstein on behalf of J. Quan Butler. So I have been listening very attentively to the Court's questioning of my colleagues who preceded me this morning, and I think this will be probably the shortest argument you'll hear today. But there's really only one important point that I think is necessary to raise. The search condition that Judge Siragusa imposed was not an appropriate condition. And the reason I say that is because it's way too broad. I recognize that the Court can impose a search condition with no basis, reasonable suspicion or any other way, any other type of suspicion. But in this case, the condition permits any peace officer, essentially, to search Mr. Butler and his premises for any reason at any time on the basis that they think he committed a traffic violation. There's — it doesn't limit it to United States probation officers or law enforcement officers acting with them, nor does it limit the condition to reasonable suspicion. But, I mean, Olivares was even broader than this, wasn't it? I'm sorry? In the case of United States v. Olivares, we upheld a special condition that allowed for searches even without individualized suspicion. Yes, I understand. We learned that that didn't violate the Fourth Amendment. It wasn't a — it wasn't — well, we upheld it. I do understand that. But I think once you cabin the basis to reasonable suspicion, Olivares doesn't say you can't do that. It says you doesn't have to. But once he does say reasonable suspicion, the question is, should that be reasonable suspicion of anything, or should it simply be reasonable suspicion of a violation of supervised release? Because it is, after all, a condition of supervised release. So should not the search be limited to violations of that condition, of that supervised release, by U.S. probation officers? He also is required not to commit State or Federal offenses, right? Yes. Under his terms of supervised release. Under the standard conditions, of course. So why would it be limited? Why would it need to be limited to supervised violation? I think that the search could be — Or even if it were, it would include other offenses, right? It would. It would. But it doesn't specify what reasonable suspicion is. For example, I think it should have said, reasonable suspicion of a violation of supervised release. Commission of a local crime, a State crime, would be, in fact, a violation of a condition of supervised release. So it would encompass that. So the fatal flaw is that it doesn't say reasonable suspicion of a violation of supervised release. I think that's one of two fatal flaws. The other one — Is it implicit in there that that's what it's about? I don't think — I think the other flaw is that it doesn't — The way it's written, yes. But, I mean, do we have to — do we have to read it with that degree of disingenuity? I don't think we have to go that far. But — But what are you worried about, then? What is the fear that you have —  Because it didn't use that explicit qualifier. It also doesn't use the qualifier of a United States probation officer investigating a violation of supervised release. A Federal probation officer who thinks reasonably and has reasonable suspicion to believe that Mr. Butler has committed any crime, State, local, or Federal, would have the right to conduct a search. But under this, the way this condition is written, without limiting it to probation officers, they're essentially opening it up to the beat cop in Rochester who doesn't like Mr. Butler, because he knows Mr. Butler for a long time, to simply come into his apartment and search. It has to be limited to the probation department looking into the violation. Otherwise, why is it a condition? I want to take a minute to talk about Mr. Butler's pro se brief. I know the government's position is there should be no hybrid representation. Why should there be? You didn't ask for it and he didn't ask for it, right? That's correct. So, I mean, why should we? Well, I recognize that this Court has said there is no hybrid representation. Either I represent him or he represents himself. That's typically the way it is, right? You have a right to counsel, and if you can't afford counsel, we'll appoint counsel. But you don't get both. You don't get to have a counsel and then supplement arguments that counsel can't or won't make because they are frivolous, but you get to make them anyway. I don't disagree with you, Judge Sullivan. I did not make the arguments that Mr. Butler attempted to make here. I reviewed those arguments when he sent me paperwork saying, you know, I had a Y.O. and it shouldn't count and all of those other arguments that he made. And, frankly, I don't want to argue against my client's interest, but I don't think the arguments rise to a viability that this Court can hear. And I am aware of my obligation not to make frivolous arguments to this Court. The Court's jurisprudence is clear that Y.O. counts under the guidelines. As far as the zero-point offender argument, he has points. Therefore, he's not a zero-point offender under any way you might argue that. And as far as his argument about the gun charge not being supported, there is an appellate waiver, and I don't see any way around it with respect to that. This was an 11C1C plea. He was sentenced within those parameters. He got what he bargained for, and I don't think I can argue against that. All right. Well, you've reserved three minutes for rebuttal. We'll now hear from Mr. Harvey. Good afternoon, Your Honors. May it please the Court. Brett Harvey for the United States. I am the AOSA who handled this case before the district court. I will start, if I could, just with the last few comments by Mr. Wallenstein regarding the pro se arguments in this case. I agree with him wholeheartedly that the defendant is not entitled to hybrid representation and that each of his claims in any event fail on the merits. With respect to the search condition in this case, the district court did not commit plain error by imposing that search condition in this case for the defendant who was convicted of drug trafficking and firearms offenses. That condition was supported by the record, and that condition required reasonable suspicion to trigger the search authority, which was sufficient to ensure there would be no greater deprivation here than reasonably necessary to accomplish the goals of supervision. With respect to the district court's imposition of the actual search condition at sentencing, it survives for two reasons. First of all, the district court explicitly adopted the PSR and the findings therein. And the PSR at page 23 specifically recommended this particular search condition because it found that it advanced the sentencing objectives of deterrence, protection of the public, and rehabilitation of the defendant. So with that in mind, the clear law from the circuit is that if a court does adopt the PSR, then the PSR does actually support the imposition of that particular condition. That is sufficient for the – to satisfy the court's obligation to individually assess. What about the language, Mr. Barnsley, focused on the language? The language, it does seem that, although it could be implied, but usually there's more words in this condition, right? Reasonable suspicion of a violation of supervised release of a crime. I don't know exactly what it is, but my experience is that there's usually something that follows reasonable suspicion, and I think Mr. Wallenstein is correct. I think generally it references that a probation officer can conduct a search with reasonable suspicion at a reasonable time. And actually, I just looked at the Beardsley judgment. It seems like this may be what the probation office is proposing to the judges. Is this the same language for this search condition? This is standard language for our district judge. So why wouldn't it be better to put in reasonable suspicion of what, right? By whom? Because the other argument by Mr. Wallenstein was that anybody can use his search condition to get him to consent to searches. I understand that argument. I think in the context in which this, you have to view this particular search condition, that it applies to probation officers. And I think it's implicit in there that we're talking about reasonable suspicion to believe that the defendant committed either a violation of supervised release or a new offense. A new offense would be a violation of supervised release. Yes, as well. Yes, of course, Judge. Well, I would tell the probation office in the future to not use this standard language to avoid anything. I will certainly pass that on. It would certainly make our job a lot easier before Your Honors. But I would note that this Court has expressly approved that particular language in a prior case. And that case was United States v. Stittler from 2023. It's the exact same language that you see here in this case. And the Court found that it was procedurally reasonable and acceptable. So I would point the Court to that particular precedent here. You're not suggesting that it supports an interpretation as broad as what Mr. Wallenstein was positing. That's correct. It applies to probation officers and it's reasonable suspicion of a violation or a crime to the extent that crimes aren't already covered by violations of supervised release. Yes, that is our position, Judge. And I would note that if you read the whole condition in context, the last part of the condition also refers to the seizure of evidence and contraband. So I think if you look at that part of the condition and read it in conjunction with the first part of the condition, it's clear that we're talking about evidence gathered by probation officers as it relates to violations of the conditions of release, including potential new violations. As far as the basis for the Court to impose this, I think in addition to the fact that the Court adopted the PSR and its findings, it's evident from this record that the search condition is appropriate. As detailed in the factual basis of the plea agreement and the PSR, this defendant was convicted of possessing fentanyl with intent to distribute and possessing firearms in furtherance of drug trafficking crimes. And as detailed in the PSR and the factual basis, this case involved the defendant selling drugs at his home, as evidenced by the fact that he sold to a confidential informant on two occasions in October of 2021 and sold to an undercover officer on two occasions in that same month in the driveway of his home. And as evidenced by the search warrant evidence that was recovered during the execution of that search warrant, the police recovered quantities of fentanyl, methamphetamine, cocaine, extensive drug packaging materials, four firearms, as well as over 200 rounds of ammunition. So I think it's pretty clear from this record that the defendant used his home as a place to sell drugs and as a place to store drugs, weapons, ammunition, and other contraband. In addition, at the time of his arrest, the defendant was found to be in possession of $930 in drug proceeds, some of which was from the second transaction with the undercover agent at his home, and the rest of which the defendant admitted was drug proceeds before the district court. So with those kind of concerns and those kind of facts underlying the offense conduct in this case, it certainly was reasonable for Judge Tarragusa to impose a search condition, especially considering the fact that there are also, in this case, concerns about recidivism. This defendant, as detailed in the PSR, had that prior youthful offender adjudication for a drug offense, a staged drug offense, as well as other brushes with the law, including assault of conduct and driving while his ability was impaired. So between his potential for recidivism and the nature and circumstances of this offense, we submit the court was completely justified in imposing this particular search condition. Thank you, Mr. Harvey. Thank you, Your Honor. We'll now hear from Mr. Wallenstein for three minutes of rebuttal. Well, just briefly, even assuming that Mr. Harvey is correct and that Judge Tarragusa was justified in the imposition of the actual search condition, I think that the way it is worded is problematic, as I said before. I don't want to repeat myself, but we've passed things like this before, right? I mean, Olivares was a case that wasn't limited to probation officers, and we upheld it. Correct. But the condition in Olivares, even in Olivares, required some form of suspicion. No, Olivares didn't have the suspicion, reasonable suspicion requirement. I'm sorry. You're correct, Judge. It seems to me that if Olivares is okay, I don't see how this one is not okay. Well, I think that once you impose reasonable suspicion as a constraint on a probation officer, I still think that that is not sufficient unless you cabinet by saying reasonable suspicion of the commission of a violation of supervised release, because that's what you're there to investigate. And I don't think it's restricted to probation officers. Sorry to interrupt. I mean, the rest of the condition is referred to contraband, right? Evidence and contraband. So does that not give some greater specificity? Well, that says what you can search for. But reasonable suspicion that those things will be in the premises, right? Yes. But I think that there has to be a connection to the violation of supervised release. And, again, I think it has to be limited to probation officers or those acting with them, because otherwise you are permitting a local cop to act on reasonable suspicion of the defendant. Is there any evidence that that has happened or is likely to happen?  That somebody else will, I guess, what, go to UCF, get a copy of the judgment and then decide that they can show up at his house and do a search? I don't know that it's happened. Seems unlikely. Well, but I think that local officers from time to time are aware that people that they are interacting with are on federal supervision. It's not something that's a secret. And once they determine that, under this, the way this condition is worded, the local beat cop in Rochester can search Mr. Butler's premises because he thinks he's dirty. To be blunt. And I think that's too broad. I think it's far too great an inclusion. Well, to the extent there's confusion about that, then certainly Mr. Butler at any time can ask the district court to clarify.  I think that. You can always seek to amend the condition to the extent it's confusing. Well, we're here to ask this court to say this is inappropriate. It seems like everybody these days is asking this court to be the folks that write the probation recommendation. Well, if I'm correct, and you find that I'm correct, then you will tell the district court that they have to be more explicit in the writing of the condition. And then, if Mr. Butler doesn't like the way it's being applied, he can go back to the district court at that point. I wouldn't suggest that this court act as the district court, but it is this court that can say this condition as written is too great an intrusion. In other words, if there's a possibility, theoretically, that this could happen, then we better jump in and fix it. Well, there's always the theoretical possibility. But as a practical matter, I don't know that this is going to happen. None of this was objected to at the time that he was sentenced. There's no mystery that it was a condition. It was part of the PSR, right? It was. So read, reviewed, he's represented. He was. And a full opportunity to say, oh, wow, this is too broad. This is too problematic. And none of that was done, right? That seems to be the case. I have no way to counter that, Judge. All right. Well, thank you, Mr. Weinstein. We appreciate it. Thank you. Thank you both. We will reserve decision.